First National Bank of Hooversville,
Appellant, v. Cauffiel.

Argued March 25, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Joseph Levy,* with him *Tillman K. Saylor,* for appellant.—There is no sufficient evidence that the notes were stolen.

Cauffiel has no standing in court to defend on the ground of defective title in plaintiff: Phelan v. Moss, 67 Pa. 59.

The bank was the holder of the notes for value without notice of any defects in the title.

Merely to produce evidence that the bank's title was defective, either in itself or in a prior holder, is not sufficient to establish a defense of nonliability, but the jury must be able to find from all the evidence that the holder of the notes had knowledge of the defects: Putnam v. Oil Co., 272 Pa. 301; National Bank of Coatesville v. Palmer, 56 Pa. Superior Ct. 82; Bitner v. Diehl, 61 Pa.

Superior Ct. 483; Catasauqua Bank v. Miller, 60 Pa. Superior Ct. 220; Bank v. Hoffman, 233 Pa. 390.

*Philip N. Shettig,* with him *Paul Cauffiel* and *A. A. Nelson,* for appellee.—There is ample evidence to show that the notes were stolen.

Cauffiel has standing in court to defend on the ground of defective title: Central T. & T. Co. v. Klibanoff, 85 Pa. Superior Ct. 427.

Appellee, having shown that he had not negotiated the notes in question, and that they had been stolen from his bailee, burden was then on appellant to show that it was holder in due course: Putnam v. Oil Co., 272 Pa. 301.

Opinion by Mr. Chief Justice Moschzisker, May 12, 1930:

Plaintiff bank sued S. H. Cauffiel to recover $6,500, with interest from August 1, 1925, due on seven negotiable notes issued by a concern known as Gibb & Brown, Inc. The notes in suit were payable to bearer and contained a written guarantee signed by Cauffiel, who defended on the ground that his guarantee had never become effective because, before such delivery by him as would put the notes into circulation, they had been stolen from his agent, one Cassler, with whom he had deposited them for a special purpose. The court below, conceiving the evidence relied on by defendant to be sufficient to raise issues of fact, submitted the case to the jury, which not only found for defendant, but also, on a counterclaim filed by him, rendered a verdict in his favor for $6,060.75, that having been found by it to be the value of the alleged stolen notes. Plaintiff asked for a new trial and judgment n. o. v., both of which were refused, and on this appeal it assigns their refusal as error.

Section 59 of the Negotiable Instruments Act of May 16, 1901, P. L. 194, 202, provides that "every holder is

deemed, prima facie, to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims, acquired the title as holder in due course." At trial, defendant demanded and was allowed the benefit of this section. The basis for his demand is best shown by the following excerpt from his printed argument on the present appeal, where his counsel states: "[Defendant] having shown that the negotiable paper in question was stolen, he thereupon shifted to [plaintiff] the burden of proving that it acquired title in due course." While other sections of the Negotiable Instruments Act have been pressed upon our attention by counsel on both sides, and many decisions have been cited to us, and their alleged bearing discussed in the briefs, yet, if defendant's fundamental contention, that the negotiable paper in question was stolen, was not sustained by sufficient evidence to warrant the submission of that point to the jury, all other contentions of fact and points of law disappear from the case; and after a most diligent examination of the printed testimony, we fail to find any evidence sufficient to sustain a finding that the notes in suit were stolen.

The first reference we find in the testimony to sustain defendant's averment in his affidavit of defense, that, "while the......notes were......in the possession of ......Cassler,......they were wrongfully abstracted from said......Cassler by a person or persons unknown to the defendant," is a statement made by defendant, when on the stand in his own behalf, to the effect that, at a date which he mentioned (a considerable time after the pledge of the notes to plaintiff bank), Cassler didn't know of the bonds being lost or gone or taken away." (At this and other points in the testimony, the notes are referred to as "bonds.") It will be noticed that, in the excerpt just quoted from defendant's testimony, he omits to use the word "stolen," but later on, in stating

that when, more than seven months after the pledging of the notes to plaintiff bank, he notified it not to dispose of them, he says that they had been "purloined and taken from us beyond our knowledge and we had received nothing for them"; this is the nearest defendant comes to asserting that the notes were stolen.

When Cassler took the stand as a witness for defendant, he testified that, when Cauffiel gave him possession of the notes, he had placed them in a safe deposit box, to which both he and his daughter had keys; that, sometime later on, when examining the box, he discovered that certain of the notes, amounting in value to $6,500, were missing. Then he was asked the question, "Had you sold any part of the $20,000 worth of bonds?" to which he replied, "No." Next he was asked, "Did you authorize anyone to take out from your box any part of the $20,000 of bonds?" To this he answered, "No, I don't know as I did." Cassler's daughter, Martha Jones, was, as he testified, cashier of a national bank of which he was president. He testified that she was with him when Cauffiel turned over the notes, and that "later on" his daughter and he "went out one evening to sell some of the bonds"; but, the witness said, he "didn't authorize her to take any of them out or to use them."

The above excerpts from the testimony cover all that appears to sustain defendant's allegation that the notes were stolen from Cassler, and they are insufficient to that end.

It will be observed that, though Cassler was asked whether he authorized anyone to take the notes from his safe deposit box, he was not asked whether he himself took the notes out and put them in circulation. This, for all that appears, might be true. It will also be observed that Cassler was not even positive in his testimony that he had not authorized someone else to take the notes from the box. In answering the question on that point, he simply said: "I don't know as I did." True, he follows this by the statement that he did not

authorize his daughter to take the notes out, but this is far from saying that he did not authorize someone else. Again, while he states that he and his daughter each had a key to the box, he does not say that they were the only persons who had keys, or who were authorized to take securities from the box. There was no evidence that the box was broken into or that the notes were in fact taken therefrom by anyone without authority.

It must be remembered that Mrs. Jones was the cashier of a bank; so it is not to be assumed without stronger proof than here appears that she would steal securities out of a safe deposit box to which she had been entrusted with a key, particularly from her own father. Though the burden was on defendant to prove that the notes were stolen, and Mrs. Jones was available as a witness, she was not called to the stand, despite the plain intimation thrown out by defendant's counsel in his cross-examination of one Naugle, the cashier of plaintiff bank, that Martha Jones was the one guilty of taking the notes. However, the most that Mr. Naugle said on this score was that the man who had possession of the notes when they were pledged as collateral to his bank, though himself claiming to own them at that time, did, sometime afterwards, when plaintiff offered the notes for sale, tell the witness something about getting them from Martha Jones; which testimony is rather obscure, and in no sense shows that Martha Jones had stolen them from her father's box.

As previously stated, the evidence in this case was insufficient to establish the basic fact relied on by defendant to overcome the presumption in plaintiff's favor that it was a holder in due course, and this presumption not having been overcome, section 16 of the Negotiable Instruments Act, to the effect that "where the instrument [sued upon] is in the hands of a holder in due course, a valid delivery by all parties prior to him is conclusively presumed," applies. The court below erred in not giving binding instructions for plaintiff.

The judgment for defendant is set aside, and judgment is here entered for plaintiff; damages to be assessed in the court below.